UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NORTH CAROLINA

SOUTHERN DIVISION

CASE NO: _:17-CV-_____

| | |
|---|---|
| JOEL AGUILAR PEREZ, MANUEL EDUARDO ESCAMILLA RUIZ, ADRIAN SANCHEZ AGUILAR, AND VICTOR SANCHEZ AGUILAR, <br><br> Plaintiffs, <br><br> v. <br><br> FILIBERTO PEREZ <br><br> Defendant. | COMPLAINT FOR DAMAGES, DECLARATORY, AND INJUNCTIVE RELIEF <br><br> JURY TRIAL DEMANDED |

## PRELIMINARY STATEMENT

1. This is an action brought by four farmworkers from Mexico who lawfully entered the United States through a federal guestworker program to perform labor harvesting sweet potatoes, tobacco, cucumbers, blueberries and other crops in North Carolina in for Defendant Filiberto Perez during 2015 and/or 2016. Plaintiffs bring this action to recover the minimum hourly wages due to them under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and the promised wage under the North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.1, *et seq*. ("NCWHA"). In addition, Plaintiffs seek damages for Defendant's breaches of numerous provisions of his work contracts with Plaintiffs including for failure to provide

1

wage and transportation benefits and to maintain payroll records as promised in the work contracts and as required by applicable federal regulations governing the H-2A agricultural guestworker program.

2. Defendant violated core requirements of this federal visa program by paying the workers on a piece rate basis, failing to reimburse expenses, and charging recruitment fees.

3. Plaintiffs seek damages to redress these violations of the law.

## JURISDICTION

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1337 (interstate commerce), 28 U.S.C. § 1331 (federal question jurisdiction), 29 U.S. C. § 216(b) (FLSA), and 28 U.S.C. § 1367 (supplemental jurisdiction).

5. This Court has supplemental jurisdiction over the claims arising under state law because these claims are so related to the federal claims that they form part of the same case or controversy.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S. C. §§ 2201 and 2202.

## VENUE

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

8. Defendant Filiberto Perez is a farm labor contractor residing in Newton Grove, Sampson County, North Carolina.

9. At all times relevant to this action, Defendant was registered with the U.S. Department of Labor as a farm labor contractor in that, for a fee, he recruits, hires, transports and furnishes migrant agricultural workers.

10. At all times relevant to this Complaint in 2015 and 2016, Defendant employed Plaintiffs and other agricultural guestworkers in North Carolina to harvest sweet potatoes, tobacco, cucumbers, blueberries and other crops for sale in interstate commerce. Defendant was an employer within the meaning of the FLSA, 29 U.S.C. §203(d) and was an employer within the meaning of 20 C.F.R. §655.103(b).

11. Plaintiffs are citizens of Mexico who were admitted to the United States on a temporary basis pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) ("H-2A visa") to perform agricultural labor beginning in May of 2015. At all times relevant to this action, the Plaintiffs were engaged in commerce or in the production of goods for commerce, or were employed in an enterprise engaged in commerce or in the production of goods for interstate commerce, within the meaning of the FLSA.

12. Plaintiff Joel Aguilar Perez is a resident of Uripitio, Michoacán, Mexico. He performed agricultural labor for Defendant in North Carolina from May through November 2015. Defendant's authorized agent recruited Plaintiff Aguilar Perez in Michoacán for this employment with Defendant.

13. Plaintiff Manuel Eduardo Escamilla Ruiz is a resident of Uripitio, Michoacán, Mexico. He performed agricultural labor for Defendant in North Carolina from May through November 2015 and in June of 2016. Defendant's authorized agent recruited Plaintiff Escamilla Ruiz in Michoacán for this employment with Defendant.

14. Plaintiff Adrian Sanchez Aguilar is a resident of San Juan Buenavista, Michoacán, Mexico. He performed agricultural labor for Defendant in North Carolina from May through November 2015 and June through October of 2016. Adrian Sanchez Aguilar was recruited in Michoacán for this employment by an agent of Defendant.

15. Plaintiff Victor Sanchez Aguilar is a resident of San Juan Buenavista, Michoacán, Mexico. He performed agricultural labor for Defendant in North Carolina from May through November 2015

and in June of 2016. Defendant's authorized agent recruited Plaintiff Victor Sanchez Aguilar in Michoacán for this employment with Defendant.

## THE H-2A STATUTORY AND REGULATORY SCHEME

16. Under the H-2A Program, created by 8 U.S.C. §§1188, an agricultural employer may request temporary foreign agricultural workers, or H-2A workers, if the U.S. Department of Labor ("USDOL") certifies that two conditions are met: 1) there are insufficient available workers within the United States to perform the job and 2) that the employment of aliens will not adversely affect the wages and working conditions of similarly-situated U.S. workers. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). At all times relevant to this action, the H-2A Program was implemented pursuant to regulations published in 75 Federal Register 6884 (Feb. 12, 2010) and codified at 20 C.F.R. §§ 655.100-655.185 (2010).

17. Employers seeking to employ H-2A workers must file an Application for Temporary Employment Certification (ETA Form 9142A), with USDOL that includes a job offer, known as a Clearance Order (ETA Form 790), that contains the terms set forth in 20 C.F.R. § 655.122.

18. The federal regulations covering the H-2A Program establish the minimum benefits, wages, and working conditions that employers must provide to their workers. The terms and conditions contained in the clearance order constitute the employment contract between the employer and the workers in the absence of a separate, written contract. *See* 20 C.F.R. § 655.122(q).

19. Agricultural employers who employ H-2A workers are required to pay the higher of the adverse effect wage rate ("AEWR"), the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage for each hour of

4

work performed to all H-2A workers and other workers performing the work identified in the clearance order during the time period for which the employer has received H-2A certification. 20 C.F.R. § 655.120(a).

20. The Adverse Effect Wage Rate for 2015 was $10.32, effective on December 19, 2014. 79 Fed. Reg. 244 (Dec. 19, 2014)

21. The Adverse Effect Wage Rate for 2016 was $10.72, effective on December 22, 2015. 80 Fed. Reg. 245 (Dec. 22, 2015).

22. If an H-2A worker is "paid on a piece rate basis and the piece rate does not result at the end of the pay period in average hourly piece rate earnings during the pay period at least equal to the amount the worker would have earned had the worker been paid at the appropriate rate," an employer participating in the H-2A program is required to supplement the worker's pay at that time "so that the worker's earning are at least as much as the worker would have earned during the pay period if the worker had been paid at the appropriate hourly wage rate for each hour worked." 20 C.F.R. §655.122(l)(2)

23. The employer who seeks to employ H-2A workers must agree to abide by the assurances contained in 20 C.F.R.§ 655.135, including the assurance that the employer will comply with all applicable Federal, State and local laws and regulations, including health and safety laws. 20 C.F.R. § 655.135(e).

24. The terms and conditions of the clearance order constitute an employment contract between the employer and the H-2A workers which must be disclosed when a worker applies for the visa. 20 C.F.R. § 655.103(b).

25. Farm labor contractors, such as Defendants, are permitted to apply to USDOL for temporary labor certification to employ H-2A workers if they meet all the requirements

of the definition of an employer in 20 C.F.R. § 655.103(b) and comply with all of the assurances and obligations required of H-2A employers. 20 C.F.R. § 655.132. Farm labor contractors who receive H-2A labor certification are known as H-2A Labor Contractors or H-2ALCs.

26. Applications submitted by H-2ALCs must be limited to a single area of intended employment in which the fixed-site employer(s) to whom an H-2ALC is furnishing employees will be utilizing the employees, and must include the name and location of all fixed-site agricultural employers to whom the workers will be furnished and copies of all fully executed contracts with each fixed-site employer. 20 C.F.R. § 655.132(a), (b)(1), and (b)(4).

## 2015 FACTS

27. Defendant applied for and was granted temporary labor certification through clearance order number NC10347617 to employ 47 H-2A workers from April 17, 2015 through December 3, 2015 and to furnish them to various fixed site employers ("the 2015 Clearance Order"). A true and correct copy of the 2015 Clearance Order is attached hereto as Exhibit 5.

28. In early 2015, Defendant's authorized agents recruited Plaintiffs in the Mexican state of Michoacán to fill positions described in Defendant's Clearance Order.

29. Plaintiffs were recruited by an individual who had previously worked as an H-2A worker for Filiberto Perez.

30. In the spring of 2015, at the direction Defendant's agents, Plaintiffs traveled at their own expense from their homes in the state of Michoacán, to Monterrey, Nuevo Leon for their H-2A visa interviews. The visa application process took several days, during which each

of the Plaintiffs incurred, at their own expense, lodging expenses in Monterrey. Each Plaintiff paid, at his own expense, a visa application fee to the U.S. State Department, as required to obtain the H-2A visa.

31. Plaintiffs shared a hotel room in Monterrey for two nights while they completed the visa interview process. They each spent approximately fifty-one dollars ($51.00) U.S. on the hotel accommodations.

32. Once their respective visa applications were approved, Plaintiffs traveled to the U.S./Mexico border, where each of them paid from his personal funds a six dollar $6.00 fee for issuance of an immigration arrival/departure document commonly referred to as Form I-94.

33. Upon entering the United States as described in Paragraph ____, Plaintiffs arranged their own transportation to North Carolina.

34. Plaintiffs traveled for a total of 5 days from Michoacán to reach North Carolina, during which time they purchased food for their subsistence. At the 2015 rate of $11.86, Plaintiffs are owed $59.30 for their subsistence expenses.

**Plaintiffs' Employment with Defendant**

35. Plaintiffs arrived at a blueberry farm in North Carolina on or about May 16, 2015.

36. Plaintiffs began work on or around May 21, 2016. They did not work and did not receive pay for the period of May 16 – May 21, 2015.

37. The 2015 Contract stated that work would begin on April 17, 2015.

38. The 2015 Contract provided for work in tobacco, cucumbers and sweet potatoes, but did not mention blueberries.

39. Defendant did not reimburse Plaintiffs during their first workweek for the costs they

7

incurred for transportation between their respective homes and the jobsite, their visa costs, the I-94 fee, lodging expenses in Monterrey, or daily subsistence expenses.

40. During the blueberry harvest, Plaintiffs were required to arrive to the field and wait until the fruit was sufficiently dry that Plaintiffs could then begin picking the fruit. The time period was typically around thirty (30) minutes. They were not compensated for the waiting time.

41. Plaintiffs were compensated on a piece-rate basis for harvesting work with Defendant's crew without regard for the number of compensable hours worked. Plaintiffs' weekly earnings for piece-rate work in blueberries fell below the hourly compensation required to meet the adverse effect wage rate of $10.32 per hour. Defendant failed to supplement Plaintiffs' piece-rate earnings so that their weekly earnings equaled the adverse effect wage rate given the compensable hours of labor performed.

42. Defendants' practice of compensating Plaintiffs using the piece rate, without regard to the number of compensable hours worked at times caused Plaintiffs' wages to fall below the federal minimum wage.

43. For example, during the week of May 21, 2015 through May 28, 2015, Plaintiff Joel Aguilar Perez estimates that he worked seventy (70) hours. For said workweek, Plaintiff Aguilar Perez was only paid $420.00 in cash.

44. Plaintiff Aguilar Perez was therefore paid at a rate of only six dollars ($6.00) per hour for every hour of compensable labor performed during the workweek ending on May 28, 2016.

45. For example, during the week of May 21, 2015 through May 28, 2015, Plaintiff Manuel Eduardo Escamilla Ruiz estimates that he worked seventy (70) hours. For said workweek,

Plaintiff Escamilla Ruiz was only paid $420.00 in cash.

46. Plaintiff Escamilla Ruiz was therefore paid at a rate of only six dollars ($6.00) per hour for every hour of compensable labor performed during the workweek ending on May 28, 2016.

47. For example, during the week of May 21, 2015 through May 28, 2015, Plaintiff Adrian Sanchez Aguilar estimates that he worked seventy (70) hours. For said workweek, Plaintiff Adrian Sanchez Aguilar was only paid $420.00 in cash.

48. Plaintiff Adrian Sanchez Aguilar was therefore paid at a rate of only six dollars ($6.00) per hour for every hour of compensable labor performed during the workweek ending on May 28, 2016.

49. For example, during the week of May 21, 2015 through May 28, 2015, Plaintiff Victor Sanchez Aguilar estimates that he worked seventy (70) hours. For said workweek, Plaintiff Victor Sanchez Aguilar was only paid $420.00 in cash.

50. Plaintiff Victor Sanchez Aguilar was therefore paid at a rate of only six dollars ($6.00) per hour for every hour of compensable labor performed during the workweek ending on May 28, 2016.

51. The applicable federal minimum wage in May of 2015 was $7.25 per hour.

52. Plaintiffs continued to be underpaid for all weeks they worked in blueberries.

53. During the blueberry harvest, Plaintiffs were provided with drinking water, but Defendant did not always provide required drinking cups. Some days Plaintiffs had no choice but to share the same used drinking cup.

54. The 2015 Clearance Order did not disclose that Defendant would use H-2A visa recipients, including Plaintiffs, to work in blueberries.

55. After completing blueberry work, Plaintiffs moved to work in tobacco, cucumber harvesting, and sweet potato planting.

56. During their work in tobacco, Plaintiffs were paid by the hour at a rate of $10.32, however, Plaintiffs' paystubs do not accurately reflect the actual number of compensable hours that Plaintiff actually worked in that the paystubs underreport the actual number of compensable hours worked by Plaintiffs in a given pay period.

57. Plaintiffs were regularly underpaid for their work in tobacco.

58. For example, the week of July 24, 2015 through July 30, 2015 Plaintiff Adrian Sanchez Aguilar estimates that he worked 62.5 hours. However, Plaintiff's paycheck shows that he worked only 47.5 hours for a net pay of $490.20.

59. For example, the week of July 24, 2015 through July 30, 2015, Plaintiff Victor Sanchez Aguilar estimates that he worked 56.5 hours. However, Plaintiff's paycheck shows that he worked only 41.5 hours for a net pay of $428.28.

60. For example, the week of July 24, 2015 through July 30, 2015, Plaintiff Manuel Escamilla Ruiz estimates that he worked 62. hours. However, Plaintiff's paycheck shows that he worked only 47 hours for a net pay of $485.04.

61. For example, the week of July 17, 2015 through July 23, 2015, Plaintiff Joel Aguilar Perez estimates that he worked 64 hours. However, Plaintiff's paycheck shows that he worked only 55 hours for a net pay of $597.60.

62. Plaintiffs then moved on the harvest sweet potatoes.

63. At one point during the season, a government inspector came to the worksite. Plaintiffs were waiting in a van when the inspector arrived. They were told by the supervisor in the van that if they spoke to the inspector they would be sent back to Mexico.

64. Plaintiffs were thus prevented from speaking with the government inspector.

## 2016 FACTS

(Plaintiffs MANUEL EDUARDO ESCAMILLA RUIZ, ADRIAN SANCHEZ AGUILAR, and VICTOR SANCHEZ AGUILAR)

65. Defendant applied for and was granted temporary labor certification through clearance order number NC10475371 to employ 47 H-2A workers from April 16, 2016 through November 25, 2016 and to furnish them to various fixed site employers ("the 2016 Clearance Order"). A true and correct copy of the 2015 Clearance Order is attached hereto as Exhibit 6.

66. At all times relevant to this action, and upon information and belief, Defendant was the only H-2A employer who recruited workers in Plaintiffs' hometown.

67. At the end of the 2015 season, the workers were told that they had to pay Defendant one thousand U.S. dollars ($1,000.00) if they wanted to return to the United States to work with him in 2016.

68. Because of the lack of job opportunities or other recruiters in Plaintiffs' hometown, Plaintiffs Manuel Eduardo Escamilla Ruiz, Adrian Sanchez Aguilar, and Victor Sanchez Aguilar were coerced into paying this fee so that Defendant would recruit them to work in the United States for the 2016 season.

69. Defendant explained to Plaintiffs that this payment was the only way to ensure work with him for 2016.

70. In the spring of 2016, Defendant's son, "Junior" Perez, acting on behalf of Defendant, recruited workers to work for Defendant and arranged for their visas. Plaintiffs coordinated with "Junior" Perez in order to return to work for Defendant in 2016.

71. In the spring of 2016, Plaintiffs traveled at their own expense from their homes in the state of Michoacán, to Monterrey, Nuevo Leon for their H-2A visa interviews. The visa application process took several days, during which each of the Plaintiffs incurred, at their own expense, lodging expenses in Monterrey. Each Plaintiff paid, at his own expense, a visa application fee to the U.S. State Department, as required to obtain the H-2A visa.

72. Once their respective visa applications were approved, Plaintiffs traveled to the U.S./Mexico border, where each of them paid from his personal funds a six dollar ($6) fee for issuance of an immigration arrival/departure document commonly referred to as Form I-94.

73. Upon entering the United States as described in Paragraph 72, Plaintiffs arranged their own transportation to North Carolina.

74. Plaintiffs traveled for a total of 5 days from Michoacán to reach North Carolina, during which time they purchased food for their subsistence. At the 2016 rate of $12.09, Plaintiffs are owed $60.45 for their subsistence expenses.

75. Plaintiffs began work in the cucumber harvest on approximately June 6, 2016.

76. Defendant did not reimburse Plaintiffs during their first workweek for the costs they incurred for transportation between their respective homes and the jobsite, their visa costs, the I-94 fee, lodging expenses in Monterrey, or daily subsistence expenses.

77. Defendant did not reimburse Plaintiffs during their first workweek for the recruitment fee they paid to him at the end of the 2015 season in order to secure their employment for 2016.

78. Plaintiffs were compensated on a piece-rate basis for cucumber harvesting work with

Defendant's crew without regard for the number of compensable hours worked. Plaintiffs' weekly earnings for piece-rate work in cucumbers fell below the hourly compensation required to meet the adverse effect wage rate of $10.72 per hour. Defendant failed to supplement Plaintiff's piece-rate earnings so that their weekly earnings equaled the adverse effect wage rate given the compensable hours of labor performed.

79. Defendant's practice of compensating the Plaintiffs using the piece rate for work in cucumbers, without regard for the number of compensable hours worked in a workweek, at times caused Plaintiffs' wages to fall below the federal minimum wage.

80. Plaintiffs received their first paycheck on or around June 10, 2016. This check did not cover all the compensable hours worked in the pay period and did not supplement for the piece rate.

81. Manuel Eduardo Escamilla Ruiz and Victor Sanchez Aguilar determined that they could not stand the failure to pay their full wages and left Defendant's employment on or around June 16, 2016.

82. Plaintiffs Manuel Eduardo Escamilla Ruiz and Victor Sanchez Aguilar did not receive their pay for approximately ten days of work in 2016, nor did they receive reimbursement for their travel expenses or recruitment fees.

83. Adrian Sanchez Aguilar continued to work for Defendant until approximately October 18, 2016.

84. At no point did Plaintiff Adrian Sanchez Aguilar receive reimbursement for his travel expenses or recruitment fees.

## **FIRST CLAIM FOR RELIEF**

**(FAIR LABOR STANDARDS ACT)**

Paragraphs 1 through 84 are realleged and incorporated by reference.

Plaintiffs bring this claim under the FLSA, 29 U.S.C. §216(b), against all Defendants for violations arising from their 2015 employment with Defendant.

85. Plaintiffs have consented in writing to bring this FLSA action. Their written consents are attached as Attachments 1 through 4.
86. Defendant failed to pay the Plaintiffs at least the required federal minimum wage for each hour or part of an hour that they worked in each workweek, in violation of 29 U.S.C. § 206. This violation resulted from Defendant's failure to reimburse expenses which were incurred by Plaintiffs primarily for the benefit or convenience of Defendant during Plaintiffs' first week of work, as specified in paragraph 39. When these expenses are calculated as deductions from Plaintiffs' first week's pay, as required by law, they cause Plaintiffs' first week's earnings to be less than the federal minimum wage, $7.25 per hour.
87. Defendant also failed to pay the Plaintiffs for all hours worked during many workweeks that Plaintiffs were employed by Defendant, which resulted in an hourly wage of less than $7.25 for each hour worked by the Plaintiffs during some workweeks.
88. As a result of Defendant's action, Plaintiffs have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendant pursuant to 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF

**(NORTH CAROLINA WAGE AND HOUR ACT)**

Paragraphs 1 through 88 are realleged and incorporated by reference.

Plaintiffs bring this claim under the NCWHA, N.C. Gen. Stat. §95-25.22, against all Defendants for violations arising from their 2015 employment with Defendant.

89. Defendant paid Plaintiffs less than the applicable Adverse Effect Wage Rate for all hours worked, which Defendant promised and were required to pay, in violation of N.C.G.S. § 95-25.6.

90. As a result of this failure by Defendant in violation of their rights under N.C.G.S. § 95-25.6, Plaintiffs suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendant, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

## THIRD CLAIM FOR RELIEF

### (NORTH CAROLINA COMMON LAW OF CONTRACT)

### (2015 Contract)

Paragraphs 1 through 90 are realleged and incorporated by reference.

Plaintiffs bring this claim under the common law of contracts, against all Defendants for violations arising from their 2015 employment with Defendant.

91. The terms and conditions of employment contained in the Defendant's 2015 Clearance Order constituted an employment contract between Defendant and the H-2A workers who were employed pursuant to the clearance order.

92. Defendant failed to perform his obligations under this employment contract with each Plaintiff and breached his contractual obligations with the Plaintiffs by providing employment terms and conditions that were materially different from those described in the 2015 Order, including the following:

      a. Failing to provide minimum terms and conditions of employment

required by federal and state law, including but not limited to failure to provide single-use drinking cups as required by 29 CFR § 1928.110(c)(1)(iii);

  b. Failing to comply with the prohibition that the employer not intimidate, threaten, restrain, coerce, blacklist or in any manner discriminate or cause any person to intimidate, threaten, restrain, coerce, blacklist or in any manner discriminate against any person for asserting their rights, and for testifying or attempting to testify regarding their right;

  c. Failing to keep accurate and adequate records of hours worked and earnings including the time the worker began and ended each workday and the rate of pay;

  d. Failing to provide to every worker on each pay day an hours and earnings statement that meets Federal and State requirements and showing accurate hours worked; and

  e. Failing to pay for return transportation at the end of the contract period as required by 20 C.F.R. § 655.122(o)(3).

93. Defendant's breaches of the employment contract with Plaintiffs have caused these workers grave financial and other serious injuries.

## FOURTH CLAIM FOR RELIEF

### (FAIR LABOR STANDARDS ACT)

Paragraphs 1 through 93 are realleged and incorporated by reference.

Plaintiffs MANUEL EDUARDO ESCAMILLA RUIZ, ADRIAN SANCHEZ AGUILAR, and VICTOR SANCHEZ AGUILAR bring this claim under the FLSA, 29 U.S.C. §216(b), against all

Defendants for violations arising from their 2016 employment with Defendant.

94. Plaintiffs have consented in writing to bring this FLSA action. Their written consents are attached as Attachments 2 through 4.

95. Defendant failed to pay the Plaintiffs at least the required federal minimum wage for each hour or part of an hour that they worked in each workweek, in violation of 29 U.S.C. § 2016. This violation resulted from Defendant's failure to reimburse expenses which were incurred by Plaintiffs primarily for the benefit or convenience of Defendant during Plaintiffs' first week of work, as specified in paragraphs 76 and 77. When these expenses are calculated as deductions from Plaintiffs' first week's pay, as required by law, they cause Plaintiffs' first week's earnings to be less than the federal minimum wage, $7.25 per hour.

96. Defendant also failed to pay the Plaintiffs for all hours worked during many workweeks that Plaintiffs were employed by Defendant, which resulted in an hourly wage of less than $7.25 for each hour worked by the Plaintiffs during some workweeks.

97. As a result of Defendant's action, Plaintiffs have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendant pursuant to 29 U.S.C. § 216(b).

## FIFTH CLAIM FOR RELIEF

### (NORTH CAROLINA WAGE AND HOUR ACT)

Paragraphs 1 through 97 are realleged and incorporated by reference.

Plaintiffs MANUEL EDUARDO ESCAMILLA RUIZ, ADRIAN SANCHEZ AGUILAR, and VICTOR SANCHEZ AGUILAR bring this claim under the NCWHA, N.C. Gen. Stat. §95-25.22, against all Defendants for violations arising from their 2016 employment with Defendant.

98. Defendant paid Plaintiffs less than the applicable Adverse Effect Wage Rate for all hours

worked, which Defendant promised and were required to pay, in violation of N.C.G.S. § 95-25.6.

99. As a result of this failure by Defendant in violation of their rights under N.C.G.S. § 95-25.6, Plaintiffs suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendant, under N.C.G.S. §§ 95-25.22(a) and 95-25.22(a1).

## SIXTH CLAIM FOR RELIEF

### (NORTH CAROLINA COMMON LAW OF CONTRACT)

### (2016 Contract)

Paragraphs 1 through 99 are realleged and incorporated by reference.

Plaintiffs MANUEL EDUARDO ESCAMILLA RUIZ, ADRIAN SANCHEZ AGUILAR, and VICTOR SANCHEZ AGUILAR bring this claim under the common law of contracts, against all Defendants for violations arising from their 2016 employment with Defendant.

100. The terms and conditions of employment contained in the Defendant's 2016 Clearance Order constituted an employment contract between Defendants and the H-2A workers who were employed pursuant to the clearance order.

101. Defendant failed to perform his obligations under this employment contract with each Plaintiff and breached his contractual obligations with the Plaintiffs by providing employment terms and conditions that were materially different from those described in the 2016 Order, including the following:

    a. Failing to provide minimum terms and conditions of employment required by federal and state law;

  b. Failing to comply with the prohibition that the employer not intimidate, threaten, restrain, coerce, blacklist or in any manner discriminate or cause any person to intimidate, threaten, restrain, coerce, blacklist or in any manner discriminate against any person for asserting their rights, and for testifying or attempting to testify regarding their rights;

  c. Failing to keep accurate and adequate records of hours worked and earnings including the time the worker began and ended each workday and the rate of pay;

  d. Failing to provide to every worker on each pay day an hours and earnings statement that meets Federal and State requirements and showing accurate hours worked; and

  e. Failing to pay for return transportation at the end of the contract period as required by 20 C.F.R. § 655.122(o)(3).

Defendant's breaches of the employment contract with Plaintiffs have caused these workers grave financial and other serious injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request this court enter an order:

1. Enter a declaratory judgment that Defendant violated Plaintiffs' rights under the FLSA, the NCWHA, and common law of contracts.
2. Awarding each Plaintiff his respective unpaid minimum wages and an equal amount in liquidated damages;

3. Awarding Plaintiffs their actual damages for Defendant's breach of the employment contracts, as embodied in the clearance orders as set out in Counts 3 and 6;

4. Awarding Plaintiffs the costs and attorney's fees of this action, under the FLSA;

5. Granting such relief as this Court deems just and appropriate.

Respectfully Submitted on this the 4th day of April, 2017.

/S/ Meghan Melo
Meghan Melo
State Bar No. 44618

LEGAL AID OF NORTH CAROLINA –
Farmworker Unit
Post Office Box 26626
Raleigh, North Carolina 27611
Telephone: (919) 856-2180
Facsimile: (919) 714-6587
Email: meghanm@legalaidnc.org

AND

/s/ Lori J. Johnson
Lori J. Johnson
N.C. State Bar No. 24227

LEGAL AID OF NORTH CAROLINA –
Farmworker Unit
Post Office Box 26626
Raleigh, North Carolina 27611
Telephone: (919) 856-2180
Facsimile: (919) 714-6587
Email: lorie@legalaidnc.org

*Attorneys for Plaintiffs*